**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JEAN NICKSON MERISSAINT,

Petitioner, 9:26-cv-1695 (ECC)

v.

DAVID VENTURELLA, in his official capacity as Acting Director of the Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, in his official capacity, Acting Attorney General of the United States; and PHILIP RHONEY, in his capacity as Acting Field Office Director, Buffalo Field Office, Immigration and Customs Enforcement;

Respondents.

---

Kathy Manley, Esq., *for Petitioner*
Alexis M. Osborne, Assistant United States Attorney, *for Respondents*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On September 8, 2026, Petitioner Jean Nickson Merissaint, a national of Haiti, was taken into custody by Immigration and Customs Enforcement (ICE). Dkt. No. 1. On the same day, he filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, *see id*.

The Court issued an Order setting a briefing schedule and prohibiting Respondents from moving Petitioner outside the Northern District of New York while the Petition was pending. Dkt. No. 2. Respondents subsequently filed a letter motion, representing that at the time the Court issued its Order Petitioner had already been transferred to the Western District of New York, to be held in the federal detention facility located in that district. Dkt. No. 4. Respondents seek modification of the Court's transfer restriction in order to permit Petitioner's continued detention

in the Western District of New York for the pendency of this proceeding. *Id.*

Petitioner seeks immediate release, or in the alternative, a bond hearing, and attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412. Dkt. No. 1 at 14-15; Dkt. No. 6. After carefully considering briefing from both parties, Dkt. Nos. 1, 5, 6 the Court grants the Petition and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner, a citizen of Haiti, presented himself at the Hidalgo, Texas Port of Entry on November 2, 2022 requesting asylum and applied for admission to the United States. Dkt. No. 5 at 1; Dkt. No. 5-1. He was served with a Notice to Appear and subsequently released from immigration custody pursuant to parole, with a termination date of November 1, 2023. *Id.* In June 2023, Petitioner filed an application for asylum and for withholding of removal alleging a fear of harm if he returned to Haiti. Dkt. No. 6; Dkt. No. 6-1 at 9. On August 16, 2023, the Immigration Court granted Petitioner's unopposed request for administrative closure of proceedings based on Temporary Protected Status. Dkt. No. 5 at 2; Dkt. No. 5-4. The Immigration Court restored the case to its active calendar in September 2024, pursuant to a request from the Petitioner. Dkt. No. 5 at 2; Dkt. No. 5-5. Soon after, Petitioner's wife – an American citizen to whom he was married in July 2024 – filed an I-130 petition to adjust Petitioner's status. Dkt. No. 1 ¶ 17; Dkt. No. 6 at 1. The I-130 Petition was still pending as of April 20, 2026. Dkt. No. 6 at 1; Dkt. No. 6-2.

On September 8, 2026, Petitioner was arrested and taken into custody by ICE agents in Schenectady, New York. Dkt. No. 1 ¶ 15; Dkt. No. 5 at 2; Dkt. No. 5-7. According to the arresting officer, ICE Enforcement and Removal Operations (ERO) officers were conducting an "operation" and surveillance in Schenectady, New York when a records check on a blue Mitsubishi Outlander that was circling the area showed that the vehicle was registered to Petitioner, a "Haitian national

with no lawful status to be or remain in the United States." Dkt. No. 5-7 at 2. The ICE-ERO officers conducted "mobile surveillance" for a short distance after Petitioner stopped and entered a bistro. *Id.* An ICE-ERO officer then "initiated a field interview encounter" after Petitioner exited the bistro, and subsequently placed Petitioner into custody. *Id.* Petitioner was served with an I-200 Warrant for Arrest "at the time and place of arrest." Dkt. No. 5 at 2; Dkt. No 5-8.

## II. JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). In addition, "'[f]ederal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention.'" *Gaspar v. Akshar,* No. 9:26-cv-118 (BKS), 2026 WL 699369, at * 2 (N.D.N.Y. Feb. 17, 2026) (quoting *Lopez v. Sessions,* No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim,* 538 U.S. 510, 516-17 (2003)). "Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to 'discretionary judgment,' 'action,' or 'decision' by the Attorney General with respect to either detention or removal." *Mahmodi v. Marich*, No. 25-cv-6762, 2026 WL 113473, at *2 (W.D.N.Y. Jan. 15, 2026) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (other citations omitted)).

## III. DISCUSSION

### A. Statutory Basis for Detention

Petitioner argues that the applicable statute for his detention is 8 U.S.C. § 1226(a). Dkt. No. 1 ¶¶ 45-48. "Detention pending adjudication of removal under Section 1226 is discretionary

and affords noncitizens detained thereunder the right to an initial determination as to eligibility for release and the opportunity for a bond hearing upon detention." *Tumba Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *2 (S.D.N.Y. Nov. 4, 2025) (citing 8 C.F.R. § 1236.1(d)(1)). Respondents, however, contend that 8 U.S.C. § 1226(b)(2)(A) governs Petitioner's detention, because the termination of his parole returned him to custody under § 1225(b) pending completion of removal proceedings. Dkt. No. 5 at 2-3 (citing *Matter of Q. Li*, 29 I. & N. Dec. 66, 69-70 (B.I.A. 2025) (citing 8 C.F.R. § 212.5(e)(2)(i))). Detention under that provision is mandatory "with rare exceptions not relevant here." *Cardenas v. Almodovar*, No. 25-cv-9169, 2025 WL 3215573, at *1 (S.D.N.Y Nov. 18, 2025).

In *Barbosa da Cunha v. Freden*, the Second Circuit held that § 1225(b)(2)(A) did not govern the detention of a noncitizen who was present in the interior of the United States and was not apprehended while entering the country or shortly thereafter. 175 F.4th 61, 72-78 (2d Cir. 2026) The panel concluded that such a noncitizen's detention was governed by § 1226(a). *Id.* As the Second Circuit explained, § 1226(a) applies to noncitizens who are already present in the United States while removal proceedings remain pending, and "once an alien enters the country, the legal circumstance changes, whether their presence here is lawful, unlawful, temporary, or permanent." 175 F.4th at 86 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)) (cleaned up).

Here, Respondents acknowledge that this Court has previously rejected its position and applied *da Cunha* to conclude that a petitioner who has been paroled into the United States years before his arrest was not "seeking admission" when rearrested, and therefore was not subject to detention under § 1225(b)(2)(A). *See Torrez Arce v. Blanche,* No. 9:26-cv-501 (ECC), 2026 WL 1430509, at *3-4 (N.D.N.Y. May 21, 2026). Other courts in this district have reached the same conclusion. *See, e.g., Ampuero v. Venturella*, No. 9:26-cv-1267(MAD), 2026 WL 1983211, at

*2–5 (N.D.N.Y. July 8, 2026); *Vergel Gonzalez v. Rhoney*, No. 9:26-cv-1435(MAD), 2026 WL 2327690, at *7–9 (N.D.N.Y. Aug. 12, 2026); *German Rodriguez Lazarte v. Venturella*, No. 9:26-cv-1534 (AJB), 2026 WL 2581945, at *2-3 (N.D.N.Y. Sept. 1, 2026). The Court therefore concludes that Petitioner, who was paroled into the United States approximately four years before his arrest, was not seeking admission when he was arrested, and his present detention is governed by § 1226(a).

**B. Required Due Process**

Courts apply the three-factor balancing test articulated in *Mathews v. Eldridge,* 424 U.S. 319, 348 (1976) to determine the adequacy of the process afforded to a noncitizen detained under § 1226(a), weighing "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar,* 2026 WL 699369, at *8 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)) (in turn quoting *Mathews,* 424 U.S. at 335).

**1. Private Interest**

"[T]he Second Circuit has explained that the private interest at stake here 'is the most significant liberty interest there is—the interest in being free from imprisonment.'" *O.F.C. v. Almodovar,* No. 25-cv-9816, 2026 WL 74262, at *9 (S.D.N.Y. Jan. 9, 2026) (quoting *Velasco Lopez*, 978 F.3d at 851); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty.") (internal quotation marks omitted). In addition, although the Batavia Federal Detention

Facility is "'perhaps not akin to a maximum-security prison,'" it "is not 'meaningfully different from at least a low-security penal institution for criminal detention.'" *Persaud v. Ball,* No. 1:26-cv-841, 2026 WL 2069859, at *3 (W.D.N.Y. Jul. 17, 2026) (quoting *Wilson v. Barr,* No. 1:19-cv-1364, 2020 WL 13554798, at *7 (W.D.N.Y. May 1, 2020)). "And Petitioner's liberty interest is even more heightened because the deprivation of his liberty does not stem from a criminal adjudication." *Persaud,* 2026 WL 2069859, at *3 (citing *Alvarez Ortiz v. Freden,* 808 F. Supp. 3d 579, 599 (W.D.N.Y. 2025)).

Accordingly, the Court finds that this factor weighs in favor of Petitioner.

**2. Risk of Erroneous Deprivation**

Regarding the second factor, "[a] person's liberty cannot be abridged without 'adequate procedural protections.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) (quoting *Zadvydas,* 533 U.S. at 690). As previously set forth, the INA undoubtedly vests broad authority to arrest and detain noncitizens, "but due process must account for the wide discretion that Section 1226(a) vests in the Government to arrest *any* person in the United States suspected of being removable." *Reyes v. King*, No. 19 Civ. 8674, 2021 WL 3727614, at *6 (S.D.N.Y. Aug. 20, 2021) (emphasis in original). "And before the Government may exercise such discretion to detain a person, '§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination.'" *Lopez Benitez,* 795 F. Supp. 3d at 492-93 (quoting *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20 Civ. 2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020)); *see also O.F.C. v. Almodovar*, No. 25-cv-9816, 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("To be sure, although Section 1226(b) does not itself require a pre-deprivation hearing, it does still require some process—namely, that there be an individualized determination regarding the noncitizen's

dangerousness or risk of flight."). "That conclusion follows from the text of § 1226(a), which provides that the Attorney General 'may continue to detain' an arrested noncitizen, as the Supreme Court has interpreted similar 'may' language in other provisions of the INA to require the Attorney General to make 'some level of individualized determination.'" *Lopez Benitez,* 795 F. Supp. 3d at 492 (cleaned up).

Respondents concede that no changed-circumstances analysis pursuant to § 1226(a) was undertaken here, because, according to them, Petitioner's detention on September 8, 2026 was "a return to custody following the termination of parole rather than [] the revocation of prior release determination under § 1226(a)." Dkt. No. 5 at 3. Thus, they posit, Petitioner was subject to mandatory detention. As previously explained, the Court rejects Respondents' position in this regard, and concludes that Petitioner was entitled to an individualized determination prior to being detained on September 8. In their papers, Respondents do not identify any changed circumstances since Petitioner's 2022 parole into the country and his recent arrest that would indicate that he is a danger to the community or a risk of flight. *See, e.g., Rodriguez-Acurio v. Almodovar,* 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025) (concluding that [the petitioner's] detention without any notice or opportunity to be heard, including an individualized assessment into whether she poses a flight or public safety risk, such as 'any change in circumstances' since her release on temporary parole in September 2021 establishes a high risk of erroneous deprivation of her protected liberty interest") (citations omitted).

The record indicates that Petitioner did not have any prior arrests or criminal history when he entered the country or when he was recently arrested. Dkt. No. 5-1 at 2, Dkt. No. 5-7 at 3. This factor therefore weighs in Petitioner's favor. *See Khabazha v. United States Immigr. and Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *6 (S.D.N.Y. Nov. 25, 2025) ("When the

government seeks to curtail a person's liberty, [t]he law requires a change in relevant facts, not just a change in attitude. The decision must also be reasonably explained.") (internal citations and quotation marks omitted).

**3. The Government's Interest**

As to the final factor, the Government's "interests in detaining noncitizens under § 1226(a) [are] (1) ensuring that noncitizen[s] do not abscond and (2) ensuring they do not commit crimes." *Velasco Lopez*, 978 F.3d at 854; *see also Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) ("The Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'") (quoting *Zadvydas*, 533 U.S. at 690). "However, the Government has little interest in detaining a noncitizen who was previously determined to be neither a flight risk nor dangerous, . . .without an individualized determination of risk of flight and dangerousness." *Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 394 (S.D.N.Y. 2026).

Given the circumstances here, where ICE released Petitioner into the country on parole after presumably determining that he did not present a danger to the community or risk of flight, the absence of "demonstrable changed circumstances," and the absence of "an individualized reassessment as to [his] flight risk and dangerousness," the Court concludes that the Government's interest in re-detaining Petitioner is "minimal." *See Hassan v. Bondi,* 9:26-cv-319 (BKS), Dkt. No. 10 at *12 (concluding "that Respondent's interest in Petitioner's detention is minimal") (citing *Crespo Tacuri v. Genalo*, No. 25-cv-06896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026)).

("[T]he government's interest in continued detention is slight insofar as petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances")). The Court therefore finds that Petitioner's

detention violates his rights under the Due Process Clause of the Fifth Amendment.

### C. Remedy

Respondents argue that "the appropriate remedy is a prompt, individualized bond hearing before an Immigration Judge, not immediate release." Dkt. No. 5 at 3.

Under the circumstances here, where ICE previously released Petitioner into the country on parole, and there is nothing in the record suggesting any changed circumstances indicating dangerousness or risk of flight, the appropriate remedy is release.[1] *See Gaspar,* 2026 WL 699369, at *9 (collecting cases); *Cardenas v. Almodovar,* 25-cv-9169, 2025 WL 3215573, at *3 (S.D.N.Y. Nov. 18, 2025) (citing *Lopez Benitez*, 795 F. Supp. 3d at 498-99 (reaching that result by applying the *Mathews* test); *Tumba Huamani v. Francis,* 813 F. Supp. 3d 394, 407 (S.D.N.Y. 2025) (reaching that result, but concluding that the *Mathews* test does not apply)); *see also Rodriguez-Acurio*, 811 F. Supp. 3d at 319-20 (concluding that where ICE detained the Petitioner "under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)," then "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity for relief because the detention without adequate pre-deprivation procedures has already been carried out.")

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2241 is **GRANTED**, and it is further

**ORDERED** that Petitioner be immediately released from immigration custody by October 1, 2026 at 5 p.m., and it is further

[1] Given this conclusion, it is not necessary to address Petitioner's arguments related to the Administrative Procedures Act and the Fourth Amendment to the United States Constitution.

**ORDERED** that Respondents file a status update confirming Petitioner's release by October 1, 2026 at 5 p.m., and it is further

**ORDERED** that Respondents' request seeking modification of the transfer restriction, Dkt. No. 4, is **DENIED** as moot; and it is further

**ORDERED** that Petitioners' request to award counsel fees and costs under the Equal Access to Justice Act (EAJA) is **DENIED without prejudice** as premature. Counsel for Petitioners may apply for EAJA fees within 30 days after the 60-day appeal period has expired, *see Barbour v. Colvin,* No. 12-cv-00548, 2013 WL 7206218, at *1 (E.D.N.Y. Aug. 1, 2013).

**IT IS SO ORDERED.**

Dated: September 30, 2026

Elizabeth C. Coombe
U.S. District Judge